# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ann Marie Kaeder,<br><br>            Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. 17-cv-1858 (HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ann Marie Kaeder seeks judicial review of a final decision by the Acting Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). The matter is before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 10, 12]. For the reasons set forth below, the Court grants in part and denies in part Kaeder's motion for summary judgment, grants in part and denies in part the Commissioner's motion for summary judgment, and remands the matter to the Social Security Administration.

## I.      Procedural Background

Kaeder filed an application for DIB on April 8, 2014, alleging she was unable to work because of a disabling condition as of September 20, 2013. (R. 155.)[2] She claimed impairments of degenerative disk disease, arthritis, insomnia, and fatigue. (R. 181.) Her

---

[1]  The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.
[2]  The Social Security Administrative Record ("R.") is available at Doc. No. 9.

application was denied initially and on reconsideration.  (R. 96, 106.)  Kaeder requested a

hearing before an administrative law judge ("ALJ"), which was convened on March 2,

2016.  (R. 40-71, 110.)

The ALJ issued an unfavorable decision on March 23, 2016.  (R. 17-39.)  Pursuant

to the five-step sequential evaluation procedure outlined in 20 C.F.R. § 404.1520(a)(4),

the ALJ first determined that Kaeder had not engaged in substantial gainful activity since

the alleged onset date of September 20, 2013.  (R. 22.)  At step two, the ALJ determined

that Kaeder had severe impairments of "diabetes mellitus, type II; lumbrosacral

degenerative joint disease; obesity; history of total left knee arthroplasty; history of total

right knee arthroplasty followed by revision involving debridement of scar tissue and

resection of the distal iliotibial band; and osteoarthritis of the shoulders with excision of

the left clavicle in November 2013."  (R. 22.)  The ALJ found at the third step that no

impairment or combination of impairments met or medically equaled the severity of an

impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 23.)

At step four, the ALJ determined that Kaeder retained the residual functional

capacity ("RFC")[3] to perform a range of work at the "light" level of exertion, as defined

in 20 C.F.R. § 404.1567(b), with the following restrictions: no climbing ladders, ropes, or

scaffolds; no balancing; no bending or twisting at the trunk more than occasionally; no

kneeling, crouching, or crawling; no performing overhead tasks bilaterally more than

---

[3]  An RFC assessment measures the most a person can do, despite her limitations.
20 C.F.R. § 404.1545(a)(1).  The ALJ must base the RFC "on all relevant evidence,
including medical records, observations of treating physicians and others, and the
claimant's own descriptions of his or her limitations."  *Eichelberger v. Barnhart*,
390 F.3d 584, 591 (8th Cir. 2004).

occasionally; no exposure to hazards or dangers such as unprotected machinery; and able to change position at least every half hour for a minute or two. (R. 24.) In light of this RFC, the ALJ concluded that Kaeder could perform her past relevant work as a telephone solicitor. (R. 29.) Consequently, the ALJ deemed Kaeder not disabled. (R. 30.) Because the ALJ determined that Kaeder was not disabled at step four, he did not proceed to step five of the sequential analysis.

Kaeder sought review by the Appeals Council, which denied the request for review. (R. 1, 14.) This made the ALJ's decision the final decision of the Commissioner. (R. 1.) Kaeder then commenced this action for judicial review. She contends the ALJ erred in his assessment of the credibility of her subjective complaints of pain and other symptoms, by not giving greater weight to the opinions of her treating physicians Dr. Anne Nadine F. Maurer and Dr. Kenneth D. Olsen, and by giving too much weight to the opinion of testifying medical expert Dr. Andrew M. Steiner.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."

*Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB purposes, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.  Discussion

### A.  Whether the ALJ Failed to Properly Evaluate Kaeder's Subjective Complaints

Kaeder argues that the ALJ did not adequately account for her subjective complaints of pain, discomfort, and other symptoms. There are numerous statements by Kaeder in the record concerning the persistence, severity, and limiting effects of her pain

4

and other symptoms.

For example, in February 2014, Kaeder reported low back pain, buttock pain, and leg pain to Dr. Maurer. (R. 385.) She described the pain as a seven out of ten, constant, dull, aching, sharp, worsening over time, and aggravated by sitting, standing, walking, lifting, bending, twisting, and housework. (R. 385.) Dr. Maurer described Kaeder as "quite restricted" and needing to lie down frequently. (R. 386.) Kaeder also reported fatigue, insomnia caused by pain, and problems with concentration. (R. 386.) In November 2014, Dr. Maurer noted subjective complaints of chronic back pain with burning, numb, and aching sensations, the severity of which Kaeder rated an eight out of ten, and which was aggravated by standing, walking, lifting, bending, and housework. (R. 485.) There are numerous similar reports in the record.

Kaeder also testified at the hearing about her symptoms. She testified she could drive for only fifteen to twenty minutes before becoming uncomfortable. (R. 46.) She described right knee numbness with burning pain radiating over the top of the knee, which increases with barometric pressure, and a sore back that felt as though "somebody was sticking their knuckle in your back or you were leaning against a rock . . . all the time." (R. 54.) Kaeder testified that she could sit for ten to fifteen minutes at a time before needing to change position, that she could walk for half an hour at a time, and that she had to lie down intermittently throughout the day and evening. (R. 54-55.) Kaeder testified she lay down three to four times a day for more than two hours each time. (R. 55-56.) Her medications, Vicodin and Norco, made her very drowsy and tired. (R. 56.) Steroid injections had alleviated her knee pain but not her back pain. (R. 59.) Her back

pain affected her concentration and sleep.  (R. 60.)

It is well-established that an ALJ must consider the following factors—in addition to the objective medical evidence—in assessing the credibility of a claimant's subjective symptoms: a claimant's daily activities; work history; the intensity, duration, and frequency of symptoms; any side effects and efficacy of medications; triggering and aggravating factors; and functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *5 (S.S.A. effective Mar. 16, 2016)[4] (listing the same factors as relevant in evaluating the intensity, persistence, and limiting effects of a person's symptoms).  But the ALJ need not explicitly discuss each factor, *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005), and a court should defer to the ALJ's credibility findings when the ALJ expressly discredits the claimant and provides good reasons for doing so, *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).  On the other hand, the ALJ "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them."  *Polaski*, 739 F.3d at 1322; *see also* SSR 16-3p, 2016 WL 1119029, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.[]"").

In the case at hand, the ALJ recited the relevant factors, then observed:

[A]fter careful consideration of all of the evidence, the undersigned finds, although the claimant's medically determinable impairments reasonably could be expected to cause the symptoms alleged, nevertheless, the claimant's representations, concerning the intensity, persistence and

_____

[4]  The Court cites to the version of SSR 16-3 in effect on the date of the ALJ's decision.

functionally limiting effects of the symptoms allegedly experienced since September 23, 2013, the alleged onset date, are not generally credible, *to the extent that they are not generally consistent with the evidence overall, including the opinion testimony offered at the hearing by Dr. Steiner.*

(R. at 25) (emphasis added).  That is the extent of the ALJ's evaluation of Kaeder's subjective complaints.  The ALJ does not mention any factor other than objective medical evidence or provide any other reason for discounting Kaeder's credibility.  The Court acknowledges that an ALJ's consideration of the relevant factors need not be exhaustive, but it must be more than the ALJ did here.  Consequently, the Court finds the ALJ erred in evaluating the intensity, persistence, and limiting effects of Kaeder's pain and other symptoms.

Immediately after the sentence quoted above, the ALJ summarized the objective medical evidence for several pages.  To the extent the Commissioner would argue that the summarization was part of the credibility analysis, the Court repeats: an ALJ may not rest a credibility determination solely on the lack of objective medical evidence.  *See Polaski*, 739 F.3d at 1322; SSR 16-3p, 2016 WL 1119029, at *5.  Moreover, the concluding sentence of the summary of medical evidence makes clear the ALJ was engaged in the broader RFC assessment, not an evaluation of Kaeder's credibility.  (R. 32 ("In summary, the undersigned's findings concerning the claimant's residual functional capacity are generally consistent with the evidence overall.").)  The Court acknowledges that an ALJ may incorporate consideration of the *Polaski* factors in the broader RFC analysis, but that did not happen here.  Rather, the ALJ simply summarized the medical evidence, including Dr. Steiner's testimony, without linking any of the evidence to Kaeder's statements about the intensity, persistence, and limiting effects of her

symptoms, or to the *Polaski* factors. (*See* R. at 25-32.) An ALJ is required to evaluate a claimant's statements about her symptoms "*in relation to* the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4) (emphasis added). The ALJ did not do so here.

Consequently, the Court concludes that the ALJ erred in assessing the intensity, persistence, and limiting effects of Kaeder's symptoms. The ALJ's decision will be reversed and the matter remanded for a proper evaluation of Kaeder's subjective complaints.

### B. Whether the ALJ Erred in Assessing Kaeder's RFC, Including the Weight Assigned to the Opinions of Dr. Maurer, Dr. Olsen, and Dr. Steiner

Kaeder argues the ALJ erred by giving too much weight to Dr. Steiner's opinion and too little weight to the opinions of her treating physicians Dr. Maurer and Dr. Olsen.

A treating source's opinion on the nature and severity of a claimed impairment is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). But an ALJ need not give controlling weight to an opinion that is not well-supported by clinical findings or laboratory techniques or is inconsistent with other substantial evidence. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). If the opinion of a treating source is not afforded controlling weight, the ALJ must consider the following factors in deciding what weight is due: (1) the existence of an examining relationship; (2) the nature of the treatment relationship, such as length of treatment and frequency of examination; (3) the

8

degree to which the opinion is supported by medical evidence such as medical signs and laboratory findings; (4) consistency with the record; (5) the source's specialty; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ is not required to explicitly discuss each and every § 404.1527(c) factor, as long as he considers all the factors and gives good reasons for the weight assigned. *See Combs v. Colvin*, No. 8:12-cv-429, 2014 WL 584741, at *11 (D. Neb. Feb. 12, 2014); *Derda v. Astrue*, No. 4:09-cv-1847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011).

### 1. Dr. Maurer

Kaeder argues the ALJ erred in giving Dr. Maurer's opinions little weight. The ALJ addressed three opinions of Dr. Maurer. (R. at 32-33.)

### a. Dr. Maurer's February 2014 Opinion

In February 2014, Dr. Maurer opined that Kaeder was limited by chronic pain in that she could sit no more than twenty minutes at a time, could stand no more than twenty minutes at a time, needed to lie down frequently, could sit and stand no more than two hours total in a workday, and would miss work three to five times a week. (R. 279.) According to Dr. Maurer, Kaeder experienced fatigue and insomnia secondary to her pain, as well as concentration issues and mood disturbances. (R. 279.) Her medications caused sedation. (R. 279.) Dr. Maurer believed that Kaeder was medically disabled and unable to work. (R. 279.)

The ALJ discounted the weight given to this opinion as inconsistent with the record as a whole, not supported by Dr. Maurer's conservative course of treatment, and not supported by clinical examination findings. (R. 32.) These are valid reasons to

reduce the weight given to a treating source's opinion, and are supported by substantial evidence in the record including Dr. Maurer's own treatment notes.

In August 2013, Dr. Maurer noted no apparent distress, a wide-based and stiff gait, full strength in the lower extremities, and intact sensation in the lower extremities. (R. 430.)  The following month, Maurer documented normal lower extremity strength, reduced spinal range of motion, reduced forward flexion, reduced extension, and some spasm.  (R. 427.)  She recommended that Kaeder have an MRI.  (R. 428.)

At an appointment in February 2014, the same month in which Dr. Maurer rendered her opinion, Kaeder reported low back pain, buttock pain, and leg pain to Dr. Maurer.  (R. 385.)  She described the pain as a seven out of ten, constant, dull, aching, sharp, worsening over time, and aggravated by sitting, standing, walking, lifting, bending, twisting, and housework.  (R. 385.)  Dr. Maurer noted a September 2013 MRI with findings of a mild, broad-based disk bulge with a small midline disk protrusion; two broad-based disk bulge with a small midline disk protrusion; a broad-based disk bulge eccentric to the left; and mild facet degeneration.  (R. 385.)  Dr. Maurer's impressions were lumbar intervertebral degenerative disk disease with sciatica, chronic pain syndrome, and opioid dependence.  (R. 386.)  On examination, Dr. Maurer found tenderness throughout the back, buttock, thigh, and calf regions, but Kaeder was in no apparent distress and had normal strength in her lower extremities.  (R. 385-86.)  A review of Kaeder's systems was "[n]egative for musculoskeletal."  (R. 385.)  Dr. Maurer also recorded the same limitations she would later describe in her opinion, but did not refer to supporting objective medical evidence or clinical findings.  An ALJ may discount

a medical opinion that does not contain or refer to objective medical evidence, clinical findings, or specific work restrictions. See 20 C.F.R. § 404.1527(c)(3) (listing "supportability," as established by medical signs and laboratory findings, as a factor to consider when evaluating the weight due to a medical source's opinion).

Kaeder's primary care physician, Dr. Geeta L. Balkissoon, also treated Kaeder in February 2014. (R. 387.) Dr. Balkissoon noted that Kaeder had not followed up with Dr. Maurer for several months after the September 2013 MRI, and that Kaeder had not followed through with Dr. Balkissoon's recommendation for steroid injections. (R. 387, 389.) Dr. Balkissoon strongly encouraged Kaeder to proceed with the injections and thought they would "certainly be helpful with her pain management." (R. 389.) At an appointment the following month, Dr. Balkissoon observed that Kaeder had a full range of motion without limitation, deformity, or edema in all extremities. (R. 383.) Kaeder's affect and mood were normal. (R. 383.) Dr. Balkissoon recorded similar objective findings in June 2014. (R. 551.)

The Court finds that the ALJ did not err in concluding that Dr. Maurer's February 2014 opinion was not entitled to controlling weight, and was due only little weight. The opinion was not supported by clinical findings and was inconsistent with the record as a whole. In particular, objective evidence from Dr. Maurer's and Dr. Balkissoon's treatment records support the ALJ's findings of a conservative course of treatment, normal strength, and normal sensory functioning. To the extent Kaeder argues the ALJ was required to accept Dr. Maurer's opinion that she was medically disabled and could not work, that opinion was not due any deference because such a determination is

reserved exclusively to the Commissioner.  20 C.F.R. § 404.1527(d).  Finally, with

respect to Kaeder's argument that the ALJ did not explicitly discuss each and every

§ 404.1527(c) factor, the ALJ was not required to do so.  It was sufficient that the ALJ

considered the listed factors and gave good reasons for the weight he gave the opinion.

*See Combs*, 2014 WL 584741, at *11; *Derda*, 2011 WL 1304909, at *10.

### b.    Dr. Maurer's October 2014 Opinion

Dr. Maurer remarked in a progress note dated October 29, 2014, that Kaeder had

to lie down frequently, felt fatigued, had difficulty concentrating, and was not able to

seek gainful employment.  (R. 479.)  The ALJ gave this opinion little weight because it

was inconsistent with the overall evidence of record, including a conservative course of

treatment and multiple clinical examination findings.  (R. 33.)  The ALJ identified other

portions of the same progress note in which Dr. Maurer observed that Kaeder was in no

apparent distress and exhibited a normal gait and lower extremity strength.  (R. 33, 478.)

The ALJ also observed that Dr. Maurer's opinion appeared to be based largely on

Kaeder's self-reported symptoms and limitations and not clinical examination findings.

(R. 33.)

The Court finds the ALJ gave valid reasons to reduce the weight given to

Dr. Maurer's October 2014 opinion.  In addition to the inconsistencies the ALJ identified

in Dr. Maurer's October 2014 progress note, Dr. Balkissoon's treatment note from

August 2014 reveals that Kaeder had a normal gait, a full range of motion in the lower

extremities, fully intact motor and sensory functioning, and an alert and oriented mood.

(R. 473.)  On October 15, 2014, two weeks before Kaeder saw Dr. Maurer, Kaeder

attended an appointment with Dr. Balkissoon for a "flare of back pain" that had just occurred earlier that morning. (R. 475.) Though Dr. Balkissoon recorded obvious distress, tenderness, and an inability to flex (R. 476), it is significant that those findings were based on a very recent and short-term flare-up of pain. Dr. Balkissoon recommended that Kaeder follow-up with Dr. Maurer, and Kaeder did so on October 29, 2014.

Dr. Maurer's progress note from October 29, 2014, also suggested that Kaeder's recent, exacerbated symptoms were attributable to a "flare" rather than an ongoing condition. (*See* R. 479 ("She was at her baseline until more recently when she had this severe flare.").) As the ALJ observed, Dr. Maurer recorded that Kaeder was in no apparent distress and had a normal gait and normal lower extremity strength. (R. 478.) Dr. Maurer did not make any clinical examination findings to support her opinion that Kaeder had to lie down frequently, was fatigued, had difficulty concentrating, and could not able to seek gainful employment. Again, that opinion appears to be based on Kaeder's self-reported symptoms. Finally, Dr. Maurer's treatment plan included an increased exercise program and nutritional counseling (R. 479), which are relatively conservative treatment options.

Kaeder told Dr. Balkissoon on November 17, 2014, that "her current pain is different from her usual back pain." (R. 484.) She asked Dr. Balkissoon for a pain medication refill, which the doctor approved, but told Kaeder to request pain medication refills from Dr. Maurer in the future. (R. 484.) Kaeder followed up with Dr. Maurer on November 25, 2014. (R. 485.) Kaeder reported significant pain, especially a new pain

13

on her left side that had appeared about three weeks earlier. (R. 485.) A review of symptoms was positive for joint pain, but negative for musculoskeletal and neurological findings. (R. 485.) Again, Dr. Maurer found Kaeder in no apparent distress, with a normal gait, appropriate mood, and normal lower extremity strength. (R. 485.) Contrary to previous reports, Kaeder reported that her pain was preventing her from lying down. (R. 485.) Dr. Maurer recommended an epidural steroid injection and referred Kaeder to physical therapy. (R. 486.) Kaeder later reported that the injection had helped somewhat, but Dr. Maurer found that Kaeder "had a very nice improvement." (R. 490.)

In sum, the Court finds that the ALJ did not err in concluding that Dr. Maurer's October 2014 opinion was due only little weight, not controlling weight. The opinion was not supported by clinical findings and was inconsistent with the record as a whole. No clinical findings support an opinion that Kaeder experienced concentration difficulties and fatigue to a disabling degree. The ALJ was not required to accept Dr. Maurer's opinion that Kaeder was unable to seek gainful employment, *see* 20 C.F.R. § 404.1527(d), and the ALJ satisfied § 404.1527(c) by considering the factors and giving good reasons for the weight he assigned to the opinion.

### c. Dr. Maurer's March 2015 Opinion

Dr. Maurer completed a Physical RFC Questionnaire in March 2015. (R. 526-29.) She described Kaeder's symptoms as low back pain, leg pain, insomnia, poor concentration, depression, and fatigue. (R. 526.) Dr. Maurer identified supporting clinical findings and objective signs as muscle spasms, MRI findings, and "disc chart." (R. 526.) She noted improvement with medication, injections, and physical therapy. (R.

526.)

Dr. Maurer opined that Kaeder was not capable of even low-stress jobs because of concentration problems and depression. (R. 527.) In addition, according to Dr. Maurer, Kaeder could not walk the length of a city block, but only around the house; could sit for forty-five minutes at a time, but no more than two hours total in an eight-hour day; could stand for ten minutes at a time, but could not stand or walk more than two hours total in an eight-hour day; would need to walk for five minutes, every five minutes; could rarely lift and carry less than ten pounds; could never carry more than ten pounds; would need to use a cane; would need to take unscheduled breaks every thirty minutes; and would miss more than four days of work a month. (R. 527-28.)

The ALJ gave Dr. Maurer's March 2015 opinion little weight because it was inconsistent with the record overall and was not supported by Dr. Maurer's course of treatment. (R. 33.) The ALJ noted that two steroid injections had provided relief and that clinical findings of muscle spasm were sporadic. (R. 33.) In addition, Kaeder was not diagnosed with depression, and mental status examinations did not reveal ongoing depression or concentration difficulties. (R. 33.) Finally, there are no consistent findings of lower extremity muscle weakness or instability that would justify the need for a cane. (R. 33.)

The Court finds the ALJ gave valid reasons to reduce the weight due to the March 2015 opinion from controlling weight to little weight. Substantial evidence supports his findings that the opinion was inconsistent with the overall medical evidence and not supported by Dr. Maurer's course of treatment. For example, at an appointment on

February 17, 2015, Dr. Balkissoon observed a full range of motion without limitation in all of Kaeder's extremities; neurological testing was normal, including in the lower extremities; and Kaeder's mood and affect were normal.  (R. 562.)  Kaeder returned to treatment with Dr. Maurer—after a four-month absence—in March 2015.  (R. 564.)  Kaeder reported significant pain and spending most of her day in bed.  (R. 564.)  On examination, Kaeder had a significant amount of spasm, but her lower extremity strength was normal.  (R. 564.)  Dr. Maurer offered to refer Kaeder to a pain clinic, but Kaeder refused and said she would be more active on her own.  (R. 565.)  Dr. Maurer refilled Kaeder's Norco prescription even though Kaeder had not signed a controlled substance agreement.  (R. 565.)  Dr. Maurer filled out the Physical RFC form Kaeder had brought with her.  (R. 564-65.)  When Kaeder returned to Dr. Maurer a few months later, Dr. Maurer observed right leg numbness, but no musculoskeletal issues, no apparent distress, a normal moot, normal gait, and normal lower extremity strength.  (R. 577.)  There was no mention of muscle spasms.

The above records support the ALJ's findings that Dr. Maurer's opinion was inconsistent with the overall medical evidence and the conservative course of treatment.  There is very little, if any, evidence of insomnia, poor concentration, depression, or fatigue, and muscle spasms were infrequent.  There are no supporting clinical findings, objective signs, or MRIs in the corresponding timeframe that would support the degree of limitations indicated by Dr. Maurer on the form.

In addition, there are obvious internal inconsistencies in the March 2015 opinion.  Dr. Maurer indicated that Kaeder could not walk as far as a city block, yet she also

indicated that Kaeder would need to walk for five minutes, every five minutes. An individual who needed to walk five minutes out of every ten minutes could surely walk a city block. Similarly, an individual who would need to walk for five minutes, every five minutes, would have to be able to walk more than two hours in an eight-hour day. To the extent Kaeder would argue that the requirement of walking five minutes, every five minutes, was a typographical or other error, that raises the question of whether other findings or limitations on the form were also erroneous.

In sum, the ALJ's decision to award little weight to Dr. Maurer's March 2015 opinion was supported by substantial evidence. The opinion was inconsistent with other record evidence, including Dr. Maurer's own treatment notes and clinical findings. The ALJ was not required to accept Dr. Maurer's opinion that Kaeder was unable to seek gainful employment, *see* 20 C.F.R. § 404.1527(d), and the ALJ satisfied § 404.1527(c) by considering the relevant factors and giving good reasons for the weight assigned to the opinion.

### 2. Dr. Olsen

On September 18, 2014, Dr. Olsen wrote a letter on Kaeder's behalf indicating that her total knee replacement and "soft tissue discomfort around this knee . . . has left her disabled in some regard because of her chronic knee discomfort." (R. 525.) Dr. Olsen said Kaeder had "a permanently painful situation" that allowed her to stand or walk no more than sixty to ninety minutes at a time and restricted her from lifting more than thirty pounds at a time. (R. 525.) In addition, Dr. Olsen opined that Kaeder would need to change her position every fifteen to twenty minutes, or she would experience

"discomfort."  (R. 525.)

The ALJ noted that Dr. Olsen's opinion was consistent with Dr. Steiner's opinion in some respects, but he gave the opinion little weight because Dr. Olsen had not treated Kaeder in more than a year, there were no contemporaneous examination findings, and the opinion was based largely on Kaeder's subjective self-reports.  (R. 32-33.)

The Court finds that the ALJ did not err in giving Dr. Olsen's opinion little weight.  The fact that Dr. Olsen had not treated Kaeder in over a year is a relevant consideration under § 404.1527(c)(1) and (2), and the limitations he described were not supported by clinical findings, *see* § 404.1527(c)(3).

The ALJ also discounted Dr. Olsen's opinion because it was based largely on Kaeder's subjective complaints.  An ALJ may disregard a treating physician's opinion for this reason only when the ALJ properly finds the claimant's subjective complaints not credible.  *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017).  Here, however, the ALJ did not properly assess the intensity, persistence, and limiting effects of Kaeder's symptoms.  Thus, the ALJ was not entitled to discount Dr. Olsen's opinion for this reason.  The Court finds the error harmless, however, because there are other, sufficient good reasons for reducing the weight given to the opinion.

In addition to the reasons above, Dr. Olsen's opinion does not support the nature and significant severity of Kaeder's claimed impairments.  For example, Dr. Olsen opined that that Kaeder's knee discomfort had "left her disabled in *some* regard," without specifying limitations or to what degree.  Similarly, he described "a permanently painful situation," but did not indicate that the pain was significant or disabling.  Rather, the

18

associated restrictions were standing or walking no more than sixty to ninety minutes at a time and lifting no more than thirty pounds at a time. As to the need to change positions every fifteen to twenty minutes, Dr. Olsen noted only that, if she did not change positions that often, she would experience some level of "discomfort." He did not quantify how much discomfort, however, or identify the limitations it would cause.

In light of the above, the Court finds the ALJ adequately considered the § 404.1527(c) factors and gave good reasons for giving Dr. Olsen's opinion little weight.

### 3. Dr. Steiner

Dr. Steiner testified at the administrative hearing that Kaeder's knee replacement was "successful," which precluded a finding that Kaeder met or medically equaled Listing 1.02 at the third step of the sequential analysis. (R. 63.) Dr. Steiner recommended work-setting limitations of occasional bending and twisting; no kneeling, crawling, or crouching; occasional overhead reaching; a "light residual" restriction on lifting and time spent on feet; no working on ladders or ropes; and no balancing. (R. 63.) He did not see a need for Kaeder to use a cane, based on objective medical evidence of normal gait, normal lower extremity strength, and stable lower extremity joints. (R. 64.) Dr. Steiner rejected any need to frequently change position because no functional capacity evaluation supported such an accommodation. (R. 65.) He also did not see a medical condition necessitating a frequent need to lie down (R. 65), but he accepted sedation-like side effects of medication and added a limitation of no hazardous machinery operation. (R. 65-66.)

The ALJ "accorded significant evidentiary weight" to Dr. Steiner's opinion

because it was "generally consistent with the evidence overall." (R. 23-25.) The ALJ identified the consistent evidence as MRI results and clinical examination findings of muscle strength, intact sensation, normal gait, and positive straight leg raising tests. (R. 24, 26.)

Kaeder first challenges Dr. Steiner's testimony that he did not find medical evidence to support her asserted need to lie down frequently. Kaeder identifies evidence of obesity, right knee and low back pain, degenerative disc disease, degenerative joint disease, lumbar radiculopathy, lumbar spondylosis, and spinal stenosis as conditions that necessitate lying down frequently. However, though there is medical evidence of these conditions in the record, Dr. Steiner was correct in finding there was no medical evidence of Kaeder's need to lie down frequently. That is, no treating provider made clinical, objective findings that would support such a restriction. Rather, Kaeder's professed need to lie down was supported only by her self-reports.

Kaeder also argues that Dr. Steiner's opinion is inconsistent with all of the other medical opinions in the record. To the extent this argument invokes the opinions of Dr. Maurer and Dr. Olsen, the Court has already discussed why those opinions were entitled to little weight. As to the opinions of the state agency medical consultants, who limited Kaeder to sedentary work, the ALJ gave their opinions little weight because they were based in large part on her knee problems, for which she has not received ongoing treatment since 2013, and were inconsistent with MRI findings, clinical examination findings, and the conservative treatment Kaeder received. These were good reasons to discount the opinions of the state agency medical consultants. *See* 20 C.F.R.

§ 404.1527(c)(3), (4).

Finally, Kaeder challenges Dr. Steiner's testimony that her knee replacement surgery was "successful."  Kaeder seems to suggest that an operation is not successful unless pain and discomfort are eliminated completely.  But Kaeder takes Dr. Steiner's testimony out of context.  Dr. Steiner testified that Kaeder's knee surgery was successful in that it precluded a finding that Kaeder met or medically equaled Listing 1.02 at the third step in the sequential evaluation.  Kaeder does not argue that she did meet Listing 1.02 at the third step.  Therefore, Kaeder's argument misconstrues Dr. Steiner's testimony and is misplaced.

### 4.    Physical Performance Test Submitted to the Appeals Council

Kaeder submitted to the Appeals Council a Physical Performance Test (PPT) completed in April 2016.  (R. 631-37.)  Kaeder contends the PPT supports Dr. Maurer's and Dr. Olsen's opinions, and detracts from Dr. Steiner's opinion.  The Appeals Council considered the PPT but concluded it did not provide a basis for altering the ALJ's decision.  (R. 2.)

The PPT testing was conducted by physical therapist Nathan Ryan.  (R. 631.) Ryan determined that Kaeder could, in an eight-hour workday, sit occasionally, stand occasionally, and walk rarely to occasionally.  (R. 635-36.)  She could never kneel; could rarely bend, stoop, squat, or climb stairs; and could occasionally perform work overhead, push, and pull.  (R. 636.)  She could rarely lift or carry between one and ten pounds. (R. 636.)  She could occasionally use her feet for repetitive movements such as operating foot controls; could occasionally grasp firmly; and could frequently perform fine

manipulations and simple grasping.  (R. 636.)  She could frequently move her head and neck.  (R. 636.)

The primary major limiting factor, according to Ryan, was Kaeder's self-reported pain.  (R. 633.)  Ryan wrote that Kaeder "was significantly limited" by her reports of pain and that her "testing performance was limited by patient's pain focus behavior which includes patient['s] report of pain, patient's demonstration of pain behaviors, decreased quality of motion and slow pace."  (R. 634.)  Her reports of pain and pain behaviors were central to Ryan's assessment of her pace, endurance, quality of motion, body mechanics, safety, work efficiency, and ability to complete tasks.  (R. 634.)

The Commissioner argues the Appeals Council did not err in its consideration of the PPT because the PPT was not signed by a physician; the PPT indicates Plaintiff was told she could stop the testing at any point; and the record as a whole supports a conclusion that Plaintiff's subjective complaints were not fully credible.  (Def.'s Mem. Supp. Mot. Summ. J. at 22-23 [Doc. No. 13].)  As to the first argument, the opinion of a physical therapist is entitled to consideration as "other" evidence from a medical source. 28 C.F.R. § 404.1513(d)(1) (effective Sept. 3, 2013; amended Mar. 26, 2017).[5]  There is no requirement that a physician must approve the opinion.  Regarding the second argument, the Commissioner does not explain why advising a claimant that she may stop testing at any time should detract from the results.  The Court finds that it should not. Such an advisement is appropriate to ensure the claimant's safety and well-being during

---

[5]  The Court applies the version of the regulation in effect on the date of the ALJ's decision.

potentially strenuous testing.  Finally, as to the credibility argument, an opinion may be discounted for this reason only when the ALJ has properly found that the claimant's subjective complaints are not credible.  The ALJ did not do so here.  Consequently, the Commissioner's asserted bases for discounting the PPT are not supported by substantial evidence on the record as a whole.  On remand, the ALJ should evaluate the PPT as "other" medical source evidence and explain the weight it is due according to § 404.1527.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ann Marie Kaeder's Motion for Summary Judgment [Doc. No. 10] is **GRANTED in part** and **DENIED in part**;

2. Nancy A. Berryhill's Motion for Summary Judgment [Doc. No. 12] is **GRANTED in part** and **DENIED in part**; and

3. The matter is **REMANDED** for (1) a proper assessment of the intensity, persistence, and limiting effects of Kaeder's subjective complaints; and (2) consideration of the PPT dated April 18, 2016.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 7, 2018            _s/ Hildy Bowbeer_____
                                    HILDY BOWBEER
                                    United States Magistrate Judge